# McClendon *et al. v.* Equitable Mortgage Co.

*Common Law Action of Ejectment.*

1. *Ejectment; tenant can not have landlord made sole party defendant.*—The statute, (Code of 1896, § 1534), does not authorize a tenant who is jointly sued with his landlord in an action of ejectment to have the landlord made the sole party defendant to the suit, so as to relieve him in the event of plaintiff's recovery of liability for rent in arrear at the commencement of the suit and for such as might thereafter accrue pending his possession.

2. *Same; scope of the plea of the general issue.*—In a common law action of ejectment, the only appropriate plea is "not guilty," since, under it anything in bar of the action may be offered in evidence; and, therefore, a special plea which seeks to deny the execution of the instrument upon which the plaintiffs rely as the foundation of their title, is unnecessary and subject to demurrer.

[McClendon *et al.* v. Equitable Mortgage Co.]

3. *Mortgage; necessary notice of foreclosure.*—A general provision in a mortgage which requires that notice of the foreclosure sale be posted in at least three public places, one of which shall be at the court house door of said county, does not require a notice to be posted upon the premises; and it is no cause of complaint on the part of the mortgagor that a notice of the foreclosure sale under such mortgage was not posted upon the mortgaged premises.

4. *Same; title remains in mortgagee after foreclosure until execution of deed.*—Where a mortgagee sells lands under a power of sale contained in the instrument, the legal title to the premises remains in the mortgagee until there is executed and delivered a deed to the purchaser; and, therefore, such mortgagee, the deed has not been executed ·and delivered to the purchaser, can maintain ejectment for the mortgaged premises.

5. *Ejectment; admissibility in evidence of note secured by mortgage under which plaintiff claims title.*—In an action of ejectment where the plaintiff claims title under a mortgage, and the defendant denies the execution of said mortgage, but the evidence tends to show the execution of such mortgage by the defendant, the note evidencing the debt secured by the mortgage and which was executed by defendant, is admissible in evidence.

6. *Mortgage; execution thereof.*—Where a party whose name is signed to a mortgage appears before an officer authorized to take acknowledgments, and acknowledges that the signature to the mortgage is his, such mortgage is valid, although such party did not actually sign his name thereto; his acknowledgment being a sufficient recognition and adoption by him of the signature as his own.

7. *Same; mortgage of tract including homestead not invalid as to part not exempt.*—A mortgage in which is included more land than 160 acres claimed by the mortgagor as a homestead, and which is, as to such part invalid because it was not signed by his wife, as required by statute, is not, by reason of the want of the wife's signature, void as to the remainder of the tract.

8. *Ejectment; what necessary for defendant to exclude homestead, included in mortgage, from judgment.*—Where in an action of ejectment, the plaintiff claims title to the land sued for under a mortgage which includes 160 acres claimed by the defendant mortgagor as a homestead, and the evidence shows that the wife did not sign the mortgage, the defendant, in order to have said 160 acres excluded from the judgment for the plaintiff, must show that the value of said 160 acres does not exceed $2,000 as provided by statute, (Code of 1896, § 2033).

APPEAL from the Gadsden City Court.

Tried before the HON. JOHN H. DISQUE.

This was a common law action of ejectment, brought by the appellee, the Equitable Mortgage Company, against the appellants, James McClendon and Jonathan Hazel. In the complaint, the demises were laid in the Equitable Mortgage Company and the Equitable Security Company.

The defendant Hazel filed a motion in which he asked that the defendant, McClendon, who was his landlord, be made the sole party defendant. Objection being made by the plaintiff, this motion was overruled. The defendant McClendon filed the plea of not guilty and a verified plea, in which he denied the execution of the mortgage which was the foundation of the plaintiff's title to the land sued for. The plaintiff moved to strike this special plea from the file, on the ground that it was not a proper answer to the action. The court granted this motion and had the plea stricken from the file; and to this ruling the defendant duly excepted.

The foundation of the plaintiff's title to the land sued for was the mortgage alleged to have been executed by James McClendon and his wife to the Equitable Mortgage Company, which was foreclosed under the power contained therein, and the purchaser at said sale conveyed the lands by deed to the plaintiff. The other material facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence the court at the request of the plaintiff gave to the jury the following written charges: (1.) "The court charges the jury that under the laws of Alabama it is not necessary in order for husband and wife to make a valid mortgage, that they or either of them should actually sign their names with their own hands, but if they appear before a proper officer and acknowledge the execution as the law provides, and the officer attaches his certificate as the law provides, then this is sufficient, so far as the signing of the names to a mortgage is concerned." (2.) "The court charges the jury that if they find from the evidence that the certificate is true as to James McClendon, then

they will find for the plaintiff." (3.) "The court charges the jury if they find from the evidence that James McClendon signed the mortgage before Moody as an attesting witness, and Moody did attest same in McClendon's presence, and the mortgage was delivered, then they will find for the plaintiff." (4.) "The court charges the jury that if they find from the evidence that the certificate is true, then they will find for the plaintiff, and it can make no difference whether James McClendon and Rutha McClendon actually did or did not sign their names to the mortgage with their own hands." To the giving of each of these charges the defendants separately excepted, and also separately excepted to the court's refusal to give each of the following charges requested by them: (1.) "The court charges the jury that because James McClendon executed the note for the money, and also coupons for the interest for the same, is no evidence that Rutha McClendon signed her name to said mortgage, before W. R. Moody on 2d of October, 1889." (2.) "Because McClendon paid interest on two coupons for interest is no evidence that Rutha McClendon signed said mortgage before W. R. Moody on the 2d of October, 1889." (3.) "The court charges the jury that because McClendon executed his note for the money and also executed the coupons for the interest to be paid on said mortgage, is no sufficient evidence to show that he executed a mortgage to secure the same before W. R. Moody on 2d Oct., 1889." (4.) "The court charges the jury that the defendants nor the McClendons have no right to the custody of any mortgage from the McClendons to the plaintiffs, but the right to the custody of such is with the Mortgage Company, and it is for the defendants who hold under the mortgage to show where or what has become of any unsettled mortgages to it from McClendons and not for the defendants to acount for them. The Mortgage Company and the defendants must account for the second mortgage that Moody says was executed by the same parties on the same day and before Moody." (5.) "The court charges the jury that if they are reasonably satisfied from the evidence that James McClendon signed the mortgage; yet the jury are not reasonably

satisfied from the evidence that Rutha McClendon signed her name to said mortgage, then in such case the jury must allow the homestead of one hundred and sixty acres to the McClendons, and find verdict for the defendants for the 160 acres, the description of which is undisputed and is south-west quarter section 13, township 11, range 5, and there being no dispute that the McClendons are entitled to such homestead, if the jury believe Rutha McClendon never signed said mortgage." (6.) "The court charges the jury that if from the evidence they are reasonably satisfied that Rutha McClendon did not sign her name to the mortgage in presence of W. R. Moody on the 2d of October, 1889, then in such case the verdict must be for the defendants. In determining what credence the jury will give the evidence of W. R. Moody they may look to what he swears, and whether or not he is contradicted by any witness or witnesses, and how many, and also upon what point he is so contradicted, and the jury in this connection may consider in connection with all the other evidence whether Rutha McClendon can write her name, or make her signature by her mark, and if the mortgage is signed by her writing her name or by making her mark, and if after considering all the facts if the jury believes the evidence shows such facts, in connection with all the other evidence in the case, the jury are not reasonably satisfied Rutha McClendon wrote her name to the mortgage, and it appears on said mortgage, then the verdict of the jury must be for the defendant." (7.) "Although the law does not require the mortgage to be signed by mortgagors in their own hand writing, yet the evidence must show that if they did not sign the mortgage by their own hand, yet the evidence must show that McClendons authorized some other person to sign their names to said mortgage for them." (8.) "Because the defendants deny that they executed the mortgage in question, but say they executed a mortgage to secure the money to the mortgage company before Dave Vann is no evidence that the defendants intended or now intend to defraud the mortgage company."

There were verdict and judgment for the plaintiff. The defendants appeal, and asign as error the several rulings of the trial court to which exceptions were reserved.

DENSON, BURNETT & CULLI, for appellant.

DORTCH & MARTIN, *contra.*

TYSON, J.—This was a real action of ejectment in which appellees were plaintiffs, and appellants, James McClendon and Jonathan Hazel, were defendants. The only error assigned by Hazel was the refusal of the court, upon objection of plaintiffs, to grant his motion that McClendon, his co-defendant, who was his landlord, be made sole party defendant. The evident object of this motion was to secure his discharge from any further proceedings in the cause, thereby relieving him of any liability to plaintiffs for rent in arrears at the commencement of the suit and such as might accrue during the continuance of his possession, should the plaintiffs succeed in recovering a judgment for the lands.

The manifest purpose of section 1534 of Code of 1896 (Code of 1886, § 2700) was to confer upon the tenant, when sued in an action of ejectment, the right, which did not exist at common law, of compelling his landlord to appear and defend his title, and to relieve the tenant of the burden of litigating with the plaintiff a matter in which he has no interest other than to pay his obligation of rental to the person who can give to him a legal acquittance. This view is accentuated by section 1535 of Code of 1896 (Code of 1886, § 2701), prescribing and limiting the liability of the tenant to rent in arrear at the commencement of the suit, and that which may accrue during the continuance of his possession under his lease or license.—*Wisdom v. Reeves,* 110 Ala. 418.

2. The defendant McClendon filed the plea of not guilty and a special plea, termed by his counsel as a plea of *non est factum,* alleging that the mortgage or other instrument upon which plaintiffs rely as the foundation of their title was not executed by him or any one author-

ized to bind him in the premises, which plea was verified. To this special plea the court sustained a demurrer. The plea of the general issue imposed upon the plaintiffs the burden of proving, unless self-proving, the execution of every conveyance upon which they relied to show title in them. And such of those executed by defendant as appeared to be properly acknowledged by him, their execution could have been assailed by him under the plea of not guilty by proving the requisite facts to avoid the legal effect of the acknowledgment. The only appropriate plea in the trial of this action is "not guilty," and under it, anything that operates as a bar to the action may be given in evidence.—*Smith v. Cox,* 115 Ala. 503; *Richardson v. Stephens,* 114 Ala. 238; *Bynum v. Gold,* 106 Ala. 427. Indeed it appears that the defendant was permitted to introduce evidence tending to prove every fact alleged in his special plea.

3.    The mortgage introduced in evidence by the plaintiffs purported to be signed and properly acknowledged by the defendant and his wife. It appears to have been executed on the 30th day of September, 1889, to the Equitable Mortgage Company of Kansas City, conveying the land in controversy to secure the payment of a promissory note, of even date, executed by the defendant in the sum of $3,708.75, due on the 1st day of October, 1894, bearing interest from date at the rate of 6 per cent per annum, which interest was payable annually on the 1st day of October in each year, and evidenced by five coupons attached to said note executed by the defendant. It contained a power of sale authorizing, after default, the Equitable Mortgage Company to sell the land at public sale to the highest bidder at the door of the court-house of Etowah county, after advertising time, terms and place of sale by posting written notices thereof in at least three public places in said county, one of which shall be at the court house door of said county, and upon such sale shall execute and deliver a deed conveying the property sold to the purchaser. The testimony showed that three of the notices of the sale containing the requisite recitals were posted, one on the bulletin board at the court house door in Gadsden, Etowah county, another

at the post office in Gadsden, and the third at some other public place in the town of Gadsden  The introduction of these notices in evidence was objected to by defendant because irrelevant and because not posted upon the land to be sold.  The location for the posting of only one notice was provided for in the mortgage.  This was complied with.  The mortgage failed to designate the location for the posting of the other two, but in general terms required the mortgagee to post them at public places in the county.  The effect of this provision was to authorize the mortgagee to select the places, and the only limitation upon this authority was that he must post them at public places in the county.  The posting of one of them at the post office and the other at some public place in the town of Gadsden was a sufficient compliance.

The evidence further showed that the land was exposed for sale and that the Equitable Security Company bought it, to whom a deed was executed by the Equitable Mortgage Company.  This deed was signed by the Equitable Mortgage Company and its corporate seal was affixed by Charles N. Fowler, president, and also signed by Charles N. Fowler and James M. Gifford, receivers. This deed was objcted to by defendant because it shows on its face that the corporation is in the hands of a receiver and shows no order of court authorizing the receiver to make it.  Conceding that the recitals of the deed showed at the date of its execution that the company was in the hands of a receiver, in the absence of an order of the court or a conveyance by the company divesting it of the legal title to the lands conveyed by the mortgage, the legal title remained in this company until it signed and delivered the deed to the Equitable Security Company.

4.  The only matter of controversy upon the trial was the execution by the defendant and his wife of the mortgage to the Equitable Mortgage Company, which purported to have been acknowldged by each of them before the probate judge of Etowah county and duly recorded. This authorized its introduction in evidence.  It was *prima facie* a conveyance of the lands to this company

and shifted the onus upon the defendant of proving such a state of facts as would overcome the legal effect of the acknowledgment. The testimony offered by defendant tended to show that he and his wife never signed the mortgage, nor appeared before any officer, nor made any acknowledgment whatever, and that the certificate of the probate judge was untrue. It further tended to show they executed to the Atlanta Trust & Banking Company of Atlanta, Ga., a mortgage about the date this one bears date, upon which he obtained a loan for the same amount secured by this mortgage.

The defendant on cross-examination admitted that he executed the note, the interest coupons secured by this mortgage and a receipt to the Atlanta Trust & Banking Company of Atlanta, Ga. for "$3,708.75 less commissions as agreed, being in full for loan obtained by them for me [him] from the Equitable Mortgage Company," which receipt and interest coupons were introduced in evidence by plaintiffs without objection. The defendant further testified that on the 30th day of September, 1889, being the date of the mortgage, the land described in the mortgage was his homestead and he resided on it with his family, and that "he thought his dwelling stood on the following 160 acres of land, to-wit: S. W. ¼ of Sec. 13, T. 11, R. 5." There was some testimony tending to show that defendant's wife signed her name by mark. Her signature to the mortgage appears to have been made by her as though she wrote it. The plaintiff offered several witnesses in rebuttal whose testimony tended to contradict the testimony offered by the defendant on every material point.

In view of the admissions by the defendant of the genuineness of his signature to the receipt to the Atlanta Trust & Banking Company and the interest coupons and the improbability of his having executed a mortgage to the Atlanta Trust & Banking Company, which was shown to have been merely his agent for negotiating the loan, to secure a debt he confessedly owed the Equitable Mortgage Company, there was no error in permitting the plaintiffs to introduce the note for $3,708.75, executed by him which was secured by this mortgage.

This brings us to a consideration of the charges given in writing at the request of the appellees and those refused to appellant. Charges 1 and 4 assert that if Mc-Clendon and wife appeared before the officer and acknowledged their signatures to the mortgage, the mortgage was valid although neither of them actually signed their names. The acknowledgment by them, if found to be true by the jury, was a sufficient recognition and adoption by them of the signatures as their own.—*Lewis v. Watson,* 98 Ala. 479.

Charges 2 and 3 given at the request of the appellees were proper. They are not subject to the criticism which appellants' counsel contend for. Their insistence is that 160 acres of the land was the defendants' homestead, and if the wife did not sign the mortgage, it was void as to this portion. The answer to this is, the charges do not instruct the jury as to the quantity of land the plaintiff would be entitled to recover and the mortgage was not void as to the remainder of the tract even though she had not signed it.—*De Graffenried v. Clark,* 75 Ala. 425; *Marks, Rothenberg & Co. v. Wilson,* 115 Ala. 561.

Charges 1, 2 and 3 refused to appellant were misleading. Charge 4 was abstract. Charge 5 instructs the jury if they believe the defendant signed the mortgage but that his wife did not, they must allow the homestead of 160 acres, the description of which is S. W. $\frac{1}{4}$ of Sec. 13, T. 11, R. 5. It will be observed that while the proof showed that the defendant thought his dwelling was upon this quarter section there is an entire absence of evidence as to its value. Pretermitting a discussion of the question as to whether or not the defendant would have been required to *select* this quarter section as his homestead, since it was adjacent to the other lands sued for, it is very clear that its value should have been shown. The statute not only limits the area to 160 acres but its value to $2,000.—Code of 1896, § 2033 (Code of 1886, § 2507).

Charge 6 was bad in many respects. It instructed the jury to find a verdict for defendant should they believe that the wife did not execute the mortgage; moreover,

it in effect instructs them to find for the defendant not-withstanding they believed the wife acknowledged her signature to the mortgage before the probate judge.

Charge 7 ignored the principle announced in *Lewis v. Watson*, 98 Ala. 479, *supra*.

Charge 8 was misleading, argumentative and invaded the province of the jury.

We find no error in the record.

Judgment affirmed.